# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SMITH, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZOLL MEDICAL CORPORATION, <br><br> Defendant. | Case No. 1:23-cv-10575-IT |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated April 22, 2026 is made and entered into by and among the following Settling Parties (as defined below): Plaintiffs John Priddy, Randy McGilberry, Timothy Jemison, Nathaniel Gerth, Gary Becker, Amine M. Bendriss, Barbara Brown, David Pacholczak, Patricia McMahon, and Evan Weese (collectively, "Plaintiffs"), and ZOLL Medical Corporation ("Defendant" or "ZOLL" and, together with Plaintiffs, the "Parties" or "Settling Parties"). The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to resolve, discharge, and settle the Released Claims and this Litigation (as defined below), upon and subject to the terms and conditions set forth below.

## I.    INTRODUCTION

ZOLL manufactures and sells advanced emergency care devices that provide defibrillation and cardiac monitoring including LifeVest®—a Wearable Cardioverter Defibrillator designed to protect patients against a risk of sudden cardiac death. On or around January 28, 2023, ZOLL detected unusual activity on its internal computer network (the "Data Incident"). ZOLL took steps to mitigate the incident, consulted with third-party cybersecurity experts to assist with their response, and notified law enforcement. ZOLL confirmed that the ransomware incident involved

1

the data of current and former patients who were prescribed ZOLL's LifeVest, as well as some current and former ZOLL employees.

Soon after Defendant announced the Data Incident, fifteen plaintiffs filed lawsuits against ZOLL alleging similar causes of action. Those cases were consolidated on April 24, 2023. On February 26, 2024, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 33, the "Complaint" or "Compl."), on their own behalf and on behalf of a nationwide class of current and former customers who were prescribed or considered for ZOLL's LifeVest and current or former ZOLL employees ("Class Members"), alleging their personally identifiable information ("PII") and protected health information ("PHI," collectively, "Personal Information") was potentially accessed in the Data Incident. The Complaint brought claims for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, unjust enrichment, and declaratory judgment and injunctive relief. Plaintiffs also brought the following state statutory claims: Plaintiffs Randy McGilberry and Barbara Brown (the "Florida Plaintiffs") claimed violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201; Plaintiff Gary Becker, a Kansas resident, claimed violations of the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. §§ 50-623; Plaintiff David Pacholczak, a New York resident, claimed violations of the New York General Business Law ("NY GBL"), N.Y. Gen. Bus. Law §§ 349, *et seq.*; Plaintiff Amine Bendriss, a Pennsylvania resident, claimed violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-3; and Plaintiffs John Priddy and Patricia McMahon (the "Illinois Plaintiffs") claimed violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1.

On April 11, 2024, Defendant filed a motion to dismiss, arguing that Plaintiffs did not have standing to bring suit and that they had failed to state claims entitling them to relief. ECF No. 36. Plaintiffs filed a response in opposition on May 24, 2024. ECF No. 38.

On March 31, 2025, the Court entered an order granting Defendant's Motion to Dismiss in part[1] while permitting Plaintiffs' negligence claims under Massachusetts, Pennsylvania, Illinois, Florida, Texas, and New York law; breach of fiduciary duty claim; unjust enrichment claim; breach of implied-in-law contract claims as to Plaintiffs Priddy, McGilberry, Jemison, Becker, Bendriss, Brown, Pacholczak, and McMahon; and the Florida Plaintiffs' UTPCPL claims to proceed.

## II.    MEDIATION AND SETTLEMENT DISCUSSIONS

On November 18, 2025, the Parties engaged in an in-person mediation session with Mike Ungar of UB Greensfelder. The mediation lasted the majority of the day, and although the Parties made progress, a resolution was not reached. In the ensuing weeks, the Parties continued to engage in good-faith negotiations and reached a settlement in principle on February 3, 2026. The Parties continued to negotiate the details of the settlement, which ultimately resulted in their agreement to the terms memorialized in this Settlement Agreement.

## III.    PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Plaintiffs believe that their claims asserted in the Litigation have merit. Plaintiffs and Proposed Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendant through motion

---

[1] The Court granted Defendant's motion to dismiss as to: standing for allegations of spam and diminution in value of their Private Information; Plaintiff Becker's negligence claim under Kansas law; the breach of implied contract claim as to an implied-in-fact contract; the breach of implied contract as an implied-in-law contract only as to Plaintiffs Gerth and Weese; the claim for declaratory and injunctive relief; the Illinois Plaintiffs' ICFA claim; Plaintiff Becker's KCPA claim; Plaintiff Pacholczak's NY GBL claim; and Plaintiff Bendriss's UTPCPL claim.

practice, trial, and potential appeals. Plaintiffs and Proposed Class Counsel have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. This case presents an additional unique challenge in that the class population has already diminished by around 15% given the average age at which wearable cardioverter defibrillator devices are prescribed, the health conditions for which they are prescribed, and the age of some of the data involved in the Data Incident.

Proposed Class Counsel is highly experienced in class action litigation and, in particular, data breach and privacy litigation, and has previously served as class counsel in data breach class actions through final approval. Plaintiffs and Proposed Class Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Class Members.

## IV.    DENIAL OF WRONGDOING AND LIABILITY

Defendant denies each and every claim and contention alleged against it in the Complaint. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged. In particular, ZOLL denies that information involved in the Data Incident was ever published or misused. Nonetheless, Defendant recognizes the significant expense, operational burden, and inherent uncertainty of continued litigation and has therefore determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## V.    SETTLEMENT TERMS AND DEFINITIONS

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Proposed Class Counsel, Defendant, and Defendant's Counsel that, subject to the approval of the Court, the Released Claims (as defined

below) shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

**1.      Definitions**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1      "**Agreement**" or "**Settlement Agreement**" means this agreement, the exhibits, and the settlement embodied herein.

1.2      "**CAFA Notice**" means the Class Action Fairness Act notice that Defendant shall direct the Settlement Administrator to serve upon the appropriate state and federal officials, providing notice of the proposed Settlement pursuant to 28 U.S.C. § 1715.

1.3      "**Complaint**" or "**Compl.**" means the Consolidated Class Action Complaint filed by Plaintiffs on February 26, 2024, at ECF No. 33, in this Litigation.

1.4      "**Claimant**" means a Settlement Class Member who makes a Claim for Settlement Benefits under this Agreement.

1.5      "**Claim Form(s)**" mean(s) the form(s) that will be used by Class Members to submit a Settlement Claim to the Settlement Administrator and that are substantially in the form as shown in **Exhibit A** to this Settlement Agreement.

1.6      "**Claims Deadline**" means the postmark and/or online submission deadline for Settlement Claims, which shall be 90 days after the Notice Date (as defined below). The Claims Deadline shall clearly be set forth in the order granting Preliminary Approval of the Settlement, as well as in the Notice and on the Claim Form.

1.7      "**Claim Supplementation**" means a request by the Settlement Administrator to a

Claimant in writing, including via email, for additional information the Settlement Administrator may reasonably require in order to evaluate the Claim, *e.g.*, documentation requested on the Claim Form and information regarding the claimed losses and the resolution thereof.

1.8    "**Class Member(s)**" means a living Person(s) who falls within the definition of the Settlement Class.

1.9    "**Class Representative(s)**" mean Plaintiffs John Priddy, Randy McGilberry, Timothy Jemison, Nathaniel Gerth, Gary Becker, Amine M. Bendriss, Barbara Brown, David Pacholczak, Patricia McMahon, and Evan Weese.

1.10    "**Common Fund**" means a non-reversionary common fund in the amount of $3,500,000.00 which Defendant will fund or caused to be funded as set forth in Paragraph 8.1.

1.11    "**Costs of Settlement Administration**" means all actual costs associated with or arising from Settlement Administration, including any Notice required by Federal Rule of Civil Procedure 23.

1.12    "**Court**" means the United States District Court for the Eastern District of Massachusetts.

1.13    "**Data Incident**" means the data security incident perpetrated against Defendant by non-party criminal actors on or about January 22, 2023, and January 24, 2023, as described in the Complaint.

1.14    "**Defendant**" shall mean ZOLL Medical Corporation.

1.15    "**Defendant's Counsel**" means Baker & Hostetler LLP.

1.16    "**Dispute Resolution**" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

Docusign Envelope ID: B7A349C2-2BDD-4064-8350-671EB65E265E

1.17 "**Effective Date**" means the first date by which all of the events and conditions specified in Paragraph 10.1 herein have occurred and been met.

1.18 "**Final**" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the Court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fees award or Service Awards made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.19 "**Final Approval Order**" is the order through which the Court grants final approval of class action settlement and finds that this settlement is fair, reasonable, and adequate.

1.20 "**Final Fairness Hearing**" or "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider entering a Final Approval Order and approving the payment of attorneys' fees, costs, expenses, and/or service awards to Class Representatives.

1.21 "**Judgment**" means a judgment rendered by the Court pursuant to Federal Rule of Civil Procedure 54.

1.22 "**Litigation**" means the consolidated case brought by Plaintiffs against Defendant, styled *Robert Smith, on behalf of himself and others similarly situated v. ZOLL Medical Corporation*, Case No. 1:23-CV-10575, pending in the United States District Court of Massachusetts, Eastern Division, before the Honorable Indira Talwani.

1.23    "**Long Form Notice**" means the long-form notice of settlement to be posted on the Settlement Website (as defined below), substantially in the form as shown in **Exhibit B** to this Settlement Agreement.

1.24    "**Monetary Loss(es)**" means documented, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, fuel, and long-distance telephone charges. Documentation supporting Monetary Losses may include receipts or other documentation, not "self-prepared" by the Claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

1.25    "**Net Settlement Fund**" means the amount of funds that remain in the Common Fund after funds are paid from or allocated for payment for the following: (i) Costs of Settlement Administration incurred pursuant to this Settlement Agreement; (ii) Service Awards approved by the Court; (iii) any amounts approved by the Court for the Fee and Expense Award; (iv) applicable taxes and tax-related expenses; and (v) payment of Valid Out-of-Pocket Loss Claims.

1.26    "**Notice Date**" means 30 days after the entry of the Preliminary Approval Order, which is the date of commencement of Notice being sent to Settlement Class Members. The Notice Date shall be used for purposes of calculating the Claims Deadline, Opt-Out Date, and Objection Date deadlines, and all other deadlines that flow from the Notice Date.

8

1.27    **"Non-SSN Subclass"** means all Class Members whose Social Security numbers were not impacted in the Data Incident. Class Representatives John Priddy, Randy McGilberry, Nathaniel Gerth, Gary Becker, Amine M. Bendriss, Barbara Brown, David Pacholczak, and Timothy Jemison are Non-SSN Subclass Members.

1.28    **"Objection Date"** means the date by which Class Members may file with the Court through the Court's electronic case filing ("ECF") system and mail to Class Counsel and Defendant's Counsel their objection to the Settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Objection Date shall be 60 days after the Notice Date.

1.29    **"Opt-Out Date"** means the date by which Class Members must mail to the Settlement Administrator their requests to be excluded from the Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be 60 days after the Notice Date.

1.30    **"Person"** means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.31    **"Personal Information"** means personally identifiable information and/or protected health information that was potentially compromised in the Data Incident, which may include, individually or in combination, the following data elements: names, dates of birth, Social Security numbers, addresses, medical service information, and other demographic or health-related information.

1.32    "**Plaintiffs**" mean John Priddy, Randy McGilberry, Timothy Jemison, Nathaniel Gerth, Gary Becker, Amine M. Bendriss, Barbara Brown, David Pacholczak, Patricia McMahon, and Evan Weese.

1.33    "**Preliminary Approval Order**" means the order preliminarily approving this Settlement Agreement and ordering that Notice be provided to the Settlement Class. The Settling Parties' proposed Preliminary Approval Order is attached to this Settlement Agreement as **Exhibit C**.

1.34    "***Pro Rata* Cash Claim**" means a Claim for a cash payment from the Net Settlement Fund and distributed *pro rata* among Class Members based on a weighted allocation as described in the Settlement Agreement.

1.35    "**Proposed Class Counsel**" or "**Class Counsel**" means Jean S. Martin of Aylstock Witkin Kreis Overholtz PLC.

1.36    "**Related Entities**" means Defendant's past, present, and future parents, subsidiaries, divisions, customers, partnerships, joint ventures, affiliates, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, assigns, employees, servants, members, providers, partners, principals, officers, directors, shareholders, owners, heirs, executors, administrators, personal representatives, insurers, and reinsurers, and trustees of such entities, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.37    "**Released Claims**" shall collectively mean, for Settlement Class Members,

10

including Plaintiffs, any and all past, present, and future claims and causes of action arising from the Data Incident including, but not limited to, all claims asserted in the Litigation and any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; all state consumer, privacy-protection, and like statutes; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons, based on, relating to, concerning or arising out of the Data Incident and alleged access or misuse of their Personal Information ensuing from the Data Incident. Released Claims shall include all Unknown Claims (as defined herein). Released Claims shall not include the right of any Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of members of the Class who have timely excluded themselves from the Class.

1.38 "**Released Persons**" means Defendant and its Related Entities.

11

1.39    "**Remainder Funds**" means the funds, if any, that remain in the Common Fund after settlement payments for all Valid Claims (as defined below). The funds remaining in the Common Fund after settlement payments have been distributed and the time for cashing and/or depositing checks has expired will be Remainder Funds. The Remainder Funds will be distributed as a *cy pres* payment to one or more mutually agreed upon 501(c)(3) charitable organizations, subject to Court approval.

1.40    "**Service Awards**" shall have the meaning ascribed to it as set forth in Paragraph 7.3 of this Settlement Agreement. The Service Awards requested in this matter will be $1500 to each Class Representative, subject to court approval and will be in addition to any other Settlement Benefits Plaintiffs may receive. The Service Awards, if approved, shall be paid through the Common Fund using available funds therein.

1.41    "**Settlement Administration**" means the means the providing of Notice, the processing and payment of awards of Attorneys' Fees and Expenses and Service Award(s), and the processing and payment of Claims received from Class Members by the Settlement Administrator, and all undertakings reasonably necessary by the Settlement Administrator to fulfill its Settlement Agreement obligations.

1.42    "**Settlement Administrator**" means EisnerAmper, who is experienced in administering class action claims generally and specifically those of the type provided for and made in data security litigation.

1.43    "**Settlement Claim**" **or** "**Claim**" means a claim for Settlement Benefits made under the terms of this Settlement Agreement.

1.44    "**Settlement Class**" or "**Settlement Class Member**" means all living persons who reside in the United States and to whom Defendant issued notice of the Data Incident that certain

Personal Information was impacted in the Data Incident. The Settlement Class specifically excludes: (i) Defendant and its officers and directors; (ii) all Persons who timely and validly request exclusion from the Settlement Class; and (iii) the Judge assigned to evaluate the fairness of this settlement.

1.45   "**Settlement Website**" shall be the URL www.HeartDeviceDataSettlement.com, which the Settlement Administrator will establish and will contain detailed information about this Litigation as set forth herein.

1.46   "**Settling Parties**" means, collectively, Defendant and all Released Parties and Plaintiffs, individually and on behalf of the Settlement Class.

1.47   **"SSN Subclass"** means all Settlement Class Members whose Social Security numbers were potentially impacted in the Data Incident, as reflected in the notice of the Data Incident sent to such Class Members by Defendant and as identified in a list to be provided to the Settlement Administrator by Defendant. Class Representatives Patricia McMahon and Evan Weese are SSN Subclass Members.

1.48   "**Summary Notice**" means the short notice of the proposed class action settlement, substantially in the form as shown in **Exhibit D** to this Settlement Agreement. The Summary Notice will direct recipients to the Settlement Website where recipients may view the Long Notice and make a Settlement Claim for Settlement Benefits. The Summary Notice will also inform Class Members, *inter alia*, of the Claims Deadline, the Opt-Out Date and Objection Date, and the date of the Final Approval Hearing (as defined below).

1.49   "**Unknown Claims**" means any of the Released Claims that any Settlement Class Members, including Plaintiffs, do not know or suspect to exist in their favor at the time of the Effective Date that, if known by them, might have affected their settlement with, and release of,

the Released Persons, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs and the Released Parties intend to and expressly shall have, and each of the other members of the Settlement Class intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The members of the Settlement Class, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Plaintiffs expressly shall have, and each other member of the Settlement Class shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date of this Settlement Agreement, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and members of the Settlement Class shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.50    "**Valid Claims**" means Settlement Claims for Claimed Benefits in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

2.    **Settlement Benefits**

14

2.1    <u>Claimed Benefits</u>: All Class Members shall have the opportunity to submit a Claim Form for certain Claimed Benefits on or before the Claims Deadline. The Claimed Benefits, as described below, shall include (a) *Pro Rata* Cash Claims; and (b) Out-of-Pocket-Loss Claims distributed in accordance with this Paragraph.

a)    <u>*Pro Rata* Cash Claim</u>. Class Members may submit a Claim for a cash payment from the Net Settlement Fund. The Settlement Administrator will make *pro rata* settlement payments, which may increase or decrease the amount of the cash payment. No documentation or attestation is required. The Net Settlement Fund shall be distributed *pro rata* among Class Members based on the following weighted allocation:

- **<u>SSN Subclass Members</u>**: two (2) shares per Valid Claim;

- **<u>Non-SSN Subclass Members</u>**: one (1) share per Valid Claim.

b)    <u>Out-of-Pocket Loss Claims</u>. Class Members may submit a Claim Form for reimbursement of documented out-of-pocket Monetary Losses reasonably traceable to the Data Incident up to $5,000 per individual ("Out-of-Pocket-Loss Claims"). Out-of-Pocket-Loss Claims must include reasonable documentation of Monetary Losses related to the Data Incident. Those who elect to claim an Out-of-Pocket Loss must also attest under penalty of perjury to incurring such a loss as a result of the Data Incident.

2.2    <u>Security Attestation</u>. ZOLL has undertaken or will undertake specific, reasonable steps to further secure customer and employee information. Within 30 days of Preliminary Approval, ZOLL will provide Proposed Class Counsel with a confidential written attestation outlining those steps.

2.3     Dispute Resolution for Claims. The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (a) the Claimant is a Class Member; (b) the Claimant has provided all information needed to complete the Claim Form, including any Monetary Loss documentation that is required to reasonably support the Out-of-Pocket-Loss Claim; and (c) the information submitted could lead a reasonable person to conclude that it is more likely than not the Claimant has suffered the claimed Out-of-Pocket Losses as a result of the Data Incident. The Settlement Administrator may, at any time, request from the Claimant, in writing, additional information as the Settlement Administrator may reasonably require in order to evaluate the Claim, *e.g.*, documentation requested on the Claim Form, information regarding the Out-of-Pocket Loss Claims, and claims previously made for identity theft and the resolution thereof. For any such Claims that the Settlement Administrator determines to be implausible, the Settlement Administrator will submit those Claims to the Settling Parties. If the Settling Parties do not agree with the Claimant's Settlement Claim, after meeting and conferring, then the Settlement Claim shall be referred for resolution to the Settlement Administrator for final determination.

2.3.1   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the Claim is facially valid, the Settlement Administrator shall request additional information and give the Claimant fourteen (14) days to cure the defect before rejecting the Claim. If the defect is not cured, then the Claim will be deemed invalid and there shall be no obligation to pay the defective Claim.

2.3.2 Following receipt of any additional information requested by the Settlement Administrator, the Settlement Administrator shall have ten (10) days to accept, in whole or in part, or reject such Claim. If, after review of the Claim and all documentation submitted

by the Claimant, the Settlement Administrator determines that such a Claim is facially valid, then the Claim shall be paid. If, after review of the Claim and all documentation submitted by the Claimant, the Settlement Administrator determines that only a portion of such a Claim is facially valid, then the Claim shall be paid only for that facially valid portion. If the Claim is not facially valid because the Claimant has not provided all information needed to complete and evaluate the Claim, then the Settlement Administrator may reject the Claim without any further action. A defect in a Out-of-Pocket Loss Claim shall not cause rejection of any Valid *Pro Rata* Cash Claim submitted by the Claimant.

2.3.3 <u>Settlement Expenses</u>. All costs for Notice to the Class Members and the costs of Dispute Resolution shall be paid out of the Common Fund.

2.4    <u>Class Certification</u>. The Settling Parties agree, for purposes of this Settlement Agreement only, to the certification of the Settlement Class, including the SSN Subclass and Non-SSN Subclass. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

**3.    Order of Preliminary Approval and Publishing of Notice of Final Approval Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel and Defendant's Counsel shall jointly submit this Settlement Agreement to the Court, and Proposed Class Counsel will file a motion for preliminary approval of the settlement

17

with the Court requesting entry of a Preliminary Approval Order in the form substantially similar to **Exhibit C** in both terms and cost, requesting, *inter alia:*

a) certification of the Class and Subclasses for settlement purposes only pursuant to this Settlement Agreement;

b) preliminary approval of the Settlement Agreement as set forth herein;

c) appointment of Proposed Class Counsel as Class Counsel;

d) appointment of Plaintiffs as Class Representatives;

e) approval of the Summary Notice to be mailed to Class Members in a form substantially similar to the one attached as **Exhibit D** this Settlement Agreement;

f) approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to this Settlement Agreement, which, together with the Summary Notice, shall include a fair summary of the Parties' respective litigation positions, statements that the settlement and notice of settlement are legitimate and that the Class Members are entitled to Settlement Benefits under this Settlement Agreement, the general terms of the settlement set forth in this Settlement Agreement, instructions for how to object to or opt out of the settlement, instructions for how to obtain the Settlement Benefits, the process and instructions for making Claims to the extent contemplated herein, and the date, time and place of the Final Approval Hearing;

g) approval of a Claim Form to be used by Class Members to make a claim in a form substantially similar to the one attached as **Exhibit A** to this Settlement Agreement; and

h) appointment of EisnerAmper as the Settlement Administrator.

18

The Summary Notice, Long Notice, and Claim Form have been reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval. Immaterial revisions to these documents may also be made prior to dissemination of Notice.

3.2      Costs for providing Notice to the Class Members in accordance with the Preliminary Approval Order, and the costs of such Notice, together with the Costs of Settlement Administration shall be paid from the Common Fund. Attorneys' fees, costs, and expenses of Proposed Class Counsel, and Service Awards to Class Representatives, as approved by the Court, shall also be paid from the Common Fund. Notice shall be provided to Class Members by the Settlement Administrator as follows:

a)      *Class Member Information*: No later than ten (10) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the name, email (if any), and last known physical address of each Class Member (collectively, "Class Member Information") that Defendant possesses. Defendant shall also identify which Class Members belong to the SSN Subclass and which belong to the Non-SSN Subclass based on the notices previously sent regarding the Data Incident.

b)      For any Class Member whose information does not include an email address, the Settlement Administrator shall mail the Notice. For any Class Member whose information does not include an e-mail address or a valid address, the Settlement Administrator shall use the available information to conduct a reverse look-up search to obtain a physical address to mail the Notice.

c)      The Class Member Information and its contents shall be used by the Settlement

19

Administrator solely for the purpose of performing its obligations pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

d)    *Settlement Website*: Prior to the dissemination of the Notice to the Class Members, the Settlement Administrator shall establish the Settlement Website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website, which shall be active within 24 hours of the Notice Date, shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; and (v) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

e)    *Summary Notice:* On the Notice Date, the Settlement Administrator shall commence disseminating Notice to the Class Members. Within fifteen (15) days thereafter, dissemination of the Notice shall be completed through the following means:

- via email to email addresses, if any, in Defendant's possession. These emails will include a clear and conspicuous links to access the Settlement Website and the Claim Form.

- if Defendant does not possess the email address for any Class Member, via mail

20

to the postal address in Defendant's possession. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

- if a Summary Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Summary Notice to the forwarding address within ten (10) days of receiving the returned Summary Notice;

f)      Publishing, on or before the Notice Date, the Claim Form, Long Notice and this Settlement Agreement on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

g)      A toll-free help line with an IVR system and a live operator option shall be made available to provide Class Members with additional information about the settlement. The Settlement Administrator also will provide copies of the Long Notice and paper Claim Form, as well as this Settlement Agreement, upon request of a Class Member; and

h)      Contemporaneously with seeking Final Approval of the Settlement, Proposed Class Counsel and Defendant shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with these provisions regarding Notice. Defendant's Counsel shall

21

cooperate in providing any necessary information to the Settlement Administrator to complete the foregoing affidavit or declaration.

3.3    The Summary Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Settlement Administrator in consultation and agreement with the Settling Parties as may be reasonable and not inconsistent with such approval.

3.4    Proposed Class Counsel and Defendant's Counsel shall request that after Notice is completed the Court hold a hearing (the "Final Approval Hearing") and grant final approval of the settlement set forth herein.

3.5    Defendant will also cause the Settlement Administrator to provide notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

## 4.    Opt-Out Procedures

4.1    Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated post office box established by the Settlement Administrator. The written notice must clearly manifest a Person's intent to opt out of the Settlement Class. To be effective, written notice must be postmarked no later than the Opt-Out Date.

4.2    All Persons who submit valid and timely notices of their intent to opt out of the Settlement Class, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not validly opt out of the Settlement Class shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with the opt-out list no later than ten (10) days following the conclusion of the Opt-Out Period.

4.4     If the Settlement Administrator has received more than 250 Opt-Outs from the Settlement Class, Defendant shall have the right to terminate the Settlement Agreement in its entirety and shall notify Plaintiffs of Defendant's intention to terminate the Settlement Agreement within ten (10) days of receiving the Opt-Out list from the Settlement Administrator. If Defendant voids this Settlement Agreement under this paragraph, (a) the Parties shall be restored to their respective positions in the Litigation, and the Parties shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's Counsel; and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the settlement shall have no further force and effect with respect to the Parties, and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated and null and void, *nunc pro tunc*.

**5.     Objection Procedures**

5.1     Each Class Member desiring to object to this Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (a) the objector's full name and address; (b) the case name and docket number, *Smith v. ZOLL Medical Corporation*, Case No. 1:23-CV-10575, pending in the United States District Court of Massachusetts, Eastern Division; (c) information identifying the objector as a Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the

23

objector believes he or she is a Class Member); (d) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (e) the identity of any and all counsel representing the objector in connection with the objection; (f) a statement whether the objector and/or his or her counsel will appear at the Final Approval Hearing; and (g) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Jean S. Martin of Aylstock Witkin Kreis Overholtz PLC as Class Counsel; and Gilbert S. Keteltas of Baker & Hostetler LLP as Counsel for Defendant. The objector or his or her counsel may also file objections with the Court through the Court's ECF system or by submitting them to the Clerk of Court, with service on Class Counsel and Defendant's Counsel made through the ECF system. For all objections mailed to Class Counsel and counsel for Defendant, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement. Any Motion for Final Approval of Class Action Settlement will be filed no later than 14 days before the Final Approval Hearing.

5.2     Any Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and to object to the Settlement Agreement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in the Litigation. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.    Releases**

6.1    Upon the Effective Date, each Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims, including all Unknown Claims, as against all Released Persons. Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, continuing in, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. Any other claims Plaintiffs and each and all of the Class Members may have against Defendant that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

**7.    Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Awards to Plaintiffs**

7.1    The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or Service Awards to Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that reasonable attorneys' fees, costs, expenses, and Service Awards to Plaintiffs as may be agreed to by Defendant and Class Counsel and as ordered by the Court shall be paid from the Common Fund. Defendant and Class Counsel then negotiated and agreed to the procedure as set forth herein.

7.2    Class Counsel will move the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Common Fund, or $1,166,666.67 plus reasonable litigation expenses not to exceed $50,000 to be paid from the Common Fund. Class Counsel shall allocate and distribute any

amounts of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel and Plaintiffs' Counsel. Plaintiffs' motion for attorneys' fees, expenses, and class representative service awards will be filed no later than fourteen (14) days before the Objection and Opt-Out Deadlines. Any attorneys' fees, costs, and expenses awarded by the Court shall be paid within twenty-one (21) days of the Effective Date

7.3    Subject to Court approval, Plaintiffs intend to request a Service Award in the amount of $1,500 to each individual Plaintiff ($15,000 total), also to be paid from the Common Fund. Any Service Award that is awarded by the Court shall be paid within twenty-one (21) days of the Effective Date.

7.4    If awarded by the Court, the attorneys' fees and expenses will be distributed to Class Counsel, within twenty-one (21) days after the Effective Date. Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel, and Service Awards to Plaintiffs in accordance with Paragraph 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs, and expenses, and the Service Awards to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or Service Awards ordered by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.     Common Fund**

8.1     <u>Deposits</u>. Within fifteen (15) days of the Preliminary Approval Order, ZOLL shall fund or caused to be funded the initial portion of the Common Fund sufficient to cover the Settlement Administrator's estimated Settlement Administration Costs related to administering the Settlement Agreement. The deposit shall be made into an escrow account established and administered by the Settlement Administrator. Within 15 days of the Effective Date, ZOLL shall fund or cause to be funded the remaining amount of the Common Fund by depositing it into the escrow account. This shall constitute the Common Fund and is non-reversionary. As of the date of funding the remaining amount of the Common Fund, all rights of Defendant in or to the Common Fund shall be extinguished, except in the event this Settlement Agreement is terminated as provided herein.

8.2     <u>Custody of the Common Fund</u>. The Common Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Common Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Common Fund in the event this Settlement Agreement is terminated as provided herein.

8.3     <u>Treasury Regulations and Fund Investment</u>. The Parties agree that the Common Fund is intended to be maintained as a qualified settlement fund ("QSF") within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Common Fund and paying from the Common Fund any taxes owed with respect to the Common Fund. The Parties agree that the Common Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election

required to treat the Common Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Common Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation at a financial institution approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Common Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

8.4 Use of the Common Fund and Order of Distribution. As further described in this Settlement Agreement, the Common Fund shall be used by the Settlement Administrator to pay for the following: (a) taxes and tax-related expenses, (b) attorneys' fees, (c) Class Counsel's litigation expenses, (d) Costs of Settlement Administration, (e) Service Awards, (f) Valid *Pro Rata* Cash Claims, and (g) Valid Out-of-Pocket-Loss Claims.

The Settlement Administrator shall first use the available funds in the Common Fund to pay taxes and tax-related expenses. Next, the Settlement Administrator shall use the available funds in the Common Fund to pay Costs of Settlement Administration. Next, the Settlement Administrator shall make payment of the Service Awards to the Plaintiffs. Next, the Settlement Administrator shall use the available funds in the Common Fund to cover, in order, Class Counsel's attorneys' fees and expenses as may be awarded by the Court. Next, the Settlement Administrator shall make payment of Valid Out-of-Pocket Loss Claims from the Common Fund. The remainder will be known as the Net Settlement Fund. Finally, the Settlement Administrator shall make payments from the Net Settlement Fund on a *pro rata* basis to the Class Members who submit a Valid Claim for a *Pro Rata* Cash Claim, weighted such that SSN Subclass Members

28

receive two (2) shares per Valid Claim and Non-SSN Subclass Members receive one (1) share per Valid Claim.

The Settlement Agreement is designed to exhaust the Net Settlement Fund. To the extent any monies remain in the Net Settlement Fund more than two hundred (200) days after the distribution of all Valid Claims for *Pro Rata* Cash Claims, a subsequent Settlement Payment will be evenly made to all Class Members with Valid Claims for *Pro Rata* Cash payments who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) days after this second distribution, the Remainder Funds, if any, shall be distributed as a *cy pres* payment by mutual agreement of the Parties to a Court-approved non-profit recipient.

8.5    Taxes. All taxes relating to the Common Fund shall be paid out of the Common Fund, shall be considered a Cost of Settlement Administration, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Common Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective Counsel have made no representation or warranty with respect to any tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Settlement Agreement or derived from or made pursuant to the Common Fund. Each Class Representative and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, they, or it of the receipt of funds from the Common Fund pursuant to this Settlement Agreement.

**9.    Administration of Claims**

9.1    The Settlement Administrator shall administer, evaluate the validity of, and calculate the Claims submitted by Class Members. Class Counsel and Defendant shall be given

reports as to both Claims and distribution and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Settlement Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the Dispute Resolution process set forth herein. All Claims agreed to be paid in full by the Settlement Administrator shall be deemed Valid Claims.

9.2    Payment of Valid Claims, whether via mailed check or electronic distribution, shall be made by the Settlement Administrator within thirty (30) days of the Effective Date.

9.3    All Class Members who fail to timely submit a Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

9.4    No Person shall have any claim against the Settlement Administrator, Defendant, Class Counsel, Plaintiffs, and/or Defendant's Counsel based on distributions of benefits to Class Members.

**10.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

10.1    The "Effective Date" of the settlement shall be conditioned on the occurrence of all of the following events:

a)    Defendant has not exercised its option to terminate the Settlement Agreement pursuant to Paragraph 4.3;

b)    the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

c)    the Judgment has become Final.

10.2    If all conditions specified in the above paragraph are not satisfied, the Settlement Agreement shall be canceled and terminated unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3    Within five (5) days after the Opt-Out Date, the Settlement Administrator shall furnish to Class Counsel and to Defendant's Counsel a complete list of all timely and valid requests for exclusion from the Settlement Class (the "Opt-Out List").

10.4    If the Settlement Agreement or the releases are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of this Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or Service Awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendant shall be obligated to pay amounts already billed or incurred for costs of Notice to the Class Members, Settlement Administration, and Dispute Resolution and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

31

11.     **Miscellaneous Provisions**

11.1     The Settling Parties (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement.

11.2     The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all claims and disputes between them with respect to the Data Incident, the Litigation, and the Released Claims, including Unknown Claims. The Settlement Agreement compromises claims, including but not limited to all Released Claims, that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, the Data Incident, and the Released Claims, including Unknown Claims, except as set forth herein.

11.3     Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may

32

file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

11.5    The exhibits to this Settlement Agreement and any exhibits thereto are a material part of the Settlement Agreement and are incorporated and made a part of the Settlement Agreement.

11.6    This Settlement Agreement, including all exhibits hereto, contains the entire understanding between Defendant and Plaintiffs, individually and on behalf of the Settlement Class and all Released Persons, regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between the Parties in connection with the payment of the Litigation settlement. Except as otherwise provided herein, each of the Parties shall bear its own costs. This Settlement Agreement supersedes all previous agreements made between the Parties as to the subjects of the Settlement Agreement.

11.7    Class Counsel, on behalf of the Settlement Class, and Defendant's counsel, on behalf of Defendant, are expressly authorized to take all appropriate actions required or permitted to be taken by the Parties pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Parties which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Parties.

11.8     Each counsel or other Person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

11.9     The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

11.10     The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

11.11     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement. The Court shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Settlement Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement Agreement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

11.13     The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Massachusetts, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Massachusetts.

11.14    All dollar amounts are in United States dollars (USD).

11.15    If a Class Member opts to receive Settlement Benefits via mailed check, cashing the settlement check is a condition precedent to any Class Member's right to receive Settlement Benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Class Member shall have one hundred and eighty (180) days after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Class Member will have failed to meet a condition precedent to recovery of Settlement Benefits, the Class Member's right to receive monetary relief shall be extinguished, and there shall be no obligation to make payments to the Class Member for expense reimbursement or any other type of monetary relief. The same provisions apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days after the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.16    The Settlement Website shall be deactivated ninety (90) days after the Effective Date.

11.17    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

**Counsel for Plaintiffs and the Proposed Settlement Class**

**ZOLL Medical Corporation**

Signed by:

1A1780F50E374C5...

Jean S. Martin
Aylstock Witkin Kreis & Overholtz
PLC

Nonna Akopyan
Vice President, General Counsel

36

## SETTLEMENT TIMELINE

| Event | Time for Compliance |
|---|---|
| Defendant provides list of Class Members to the Settlement Administrator | 10 days after the Order Granting Preliminary Approval |
| Notice Date | 30 days after the Order Granting Preliminary Approval |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards | 14 days before the Objection and Opt-Out Deadlines) |
| Objection Deadline | 90 days after the Order Granting Preliminary Approval (60 days after the Notice Date) |
| Opt-Out Deadline | 90 days after the Order Granting Preliminary Approval (60 days after the Notice Date) |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | 10 days after the Objection and Opt-Out Deadlines) |
| Claims Deadline | 120 days after the Order Granting Preliminary Approval (90 days after the Notice Date) |
|  |  |
| **Final Approval Hearing** | _____, 2026 (no earlier than 100 days the Preliminary Approval Order) |
| Motion for Final Approval | 14 days before the Final Approval Hearing |
|  |  |
| **From Order Granting Final Approval** |  |
| Effective Date | +30 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Class Representative Service Awards and Payment of Attorneys' Fees and Expenses | +21 days after the Effective Date) |
| Payment of Claims to Class Members | +30 days after the Effective Date |
| Settlement Website Deactivation | +90 days after the Effective Date |