**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT SMITH, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOLL MEDICAL CORPORATION,<br><br>Defendant. | Case No. 1:23-cv-10575-IT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND CLASS REPRESENTATIVES SERVICE AWARDS**

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 7

A. Attorneys' Fees and Expenses ........ 7

IV. ARGUMENT ........ 8

A. The Requested Attorneys' Fees are a Reasonable Percentage of the Common Fund ........ 8

1. The Size of the Fund and Number of Persons Benefitted ........ 8

2. Skill, Experience, and Efficiency of Attorneys Involved ........ 8

3. Complexity and Duration of Litigation ........ 10

4. Risks of Litigation ........ 10

5. Amount of Time Devoted to the Case by Counsel ........ 11

6. Awards in Similar Cases ........ 12

7. Public Policy Considerations ........ 13

B. The Requested Expenses Are Reasonable and Should Be Reimbursed ........ 14

C. The Requested Service Awards Are Reasonable And Should Be Granted ........ 14

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## CASES

*All Ophthalmology, PLLC v. ECL Grp., LLC*,
No. 1:22-cv-296, 2024 WL 3203226, (M.D.N.C. June 27, 2024) ........................................ 13

*Beasley v. TTEC Servs. Corp.*,
No. 1:22-cv-00097-PAB-STV, 2024 WL 710411, (D. Colo. Feb. 21, 2024)........................ 15

*Boeing Co. v. VanGemert*,
*444 U.S. 472, 478 (1980)*.......................................................................................... 7

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324, (D. Mass. 2015) ................................................................... 14, 15

*Bickham v. ReproSource Fertility Diagnostics, Inc.*,
No. 1:21-cv-11879, 2024 WL 3677917, (D. Mass. July 17, 2024) .................................... 7, 8

*Carlson v. Target Enterprise, Inc.*,
447 F. Supp. 3d 1, (D. Mass. 2020) .................................................................... 15

*Corra v. ACTS Ret. Servs., Inc.*,
No. CV 22-2917, 2024 WL 22075, (E.D. Pa. Jan. 2, 2024) ................................................... 9

*Desue v. 20/20 Eye Care Network, Inc.*,
No. 21-CIV-61275-RAR, 2023 WL 4420348, (S.D. Fla. July 8, 2023)............................... 10

*Dunn v. Complete Payroll Solution, LLC*,
No. 1:25-cv-30045, Doc. No. 65 (D. Mass. June 25, 2026) .................................................. 13

*Edke v. Belden, Inc.*,
No. 21-cv-0813, 2021 WL 3022322 (N.D. Ill. July 16, 2021) .............................................. 10

*Fox v. Iowa Health Sys.*,
No. 3:18-CV-00327-JDP, 2021 WL 826741, (W.D. Wis. Mar. 4, 2021)............................... 9

*Fulton-Green v. Accolade, Inc.*,
No. 18-cv-274, 2019 WL 4677954, (E.D. Pa. Sept. 24, 2019)............................................. 11

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
2016 WL 11272044, (D. Mass. Nov. 3, 2016) ......................................................... 7

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-01415, 2019 WL 6972701, (D. Colo. Dec. 16, 2019) ......................................... 10

*Hashemi v. Bosley, Inc.*,

No. 2:21-cv-946 PSG (RAOX), 2022 WL 18278431, (C.D. Cal. Nov. 21, 2022) .................. 9

*In re Capital One Consumer Data Security Breach Litig.*,
MDL No. 1:19-md-2915, 2022 WL 17176495, (E.D. Va. Nov. 17, 2022) ...................... 11, 13

*In re Fideltiy/Micron Securities Litig.*,
167 F.3d 735, (1st Cir. 1999) .......................................................................................... 14

*In re Forefront Data Breach Litig.*,
No. 21-cv-887, 2023 WL 6215366, (E.D. Wis. Mar. 22, 2023) ........................................... 13

*In re Fortra File Transfer Software Data Security Breach Litig.*,
794 F. Supp. 3d 1203, (S.D. Fla. 2025) .............................................................................. 13

*In re Loestrin* 24 Fe Antitrust Litig.,
2020 WL 4035125 .............................................................................................................. 8

*In re Novant Health, Inc.*,
2024 WL 3028443 ............................................................................................................ 15

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448, (D.P.R. 2011) .................................................................................... 15

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72, (D.N.J. 2001) ...................................................................................... 14

*In re Solodyn Antitrust Litig.*,
No. 1:14-md-2503, 2018 WL 7075881, (D. Mass. July 18, 2018) .......................................... 7

*In re Thirteen Appeals*,
56 F.3d 295, (1st Cir. 1995) ................................................................................................. 7

*In re Wawa, Inc. Data Sec. Litig.*,
141 F.4th 456 (3d Cir. 2025) ............................................................................................. 10

*In re Fidelity Data Breach Litigation*,
No. 24-cv-12601-LTS, (July 9, 2026) ................................................................................. 15

*Kondash v. Citizens Bank, Nat'l Ass'n*,
No. 18-cv-00288, 2020 WL 7641785, (D.R.I. Dec. 23, 2020) ................................ 7, 8, 12, 13

*Krant v. UnitedLex Corporation*,
No. 23-cv-2443, 2024 WL 5187565, (D. Kan. Dec. 20, 2024) ............................................ 10

*Mooney v. Domino's Pizza, Inc.*,
No. 1:14-cv-13723-IT, 2018 WL 10232918, (D. Mass. Jan. 23, 2018) ............................. 7, 12

*Portier et al. v. NEO Technology Solutions*, *et al.*,
No. 17-cv-30111-TSH, (September 15, 2022)........................................................................ 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................... 10

*Weekes v. Cohen Cleary, P.C.*,
1:23-cv-10817, Doc. No. 61 (D. Mass. Aug. 14, 2025)........................................................ 13

Plaintiffs John Priddy, Randy McGilberry, Timothy Jemison, Nathaniel Gerth, Gary Becker, Amine M. Bendriss, Barbara Brown, David Pacholczak, Patricia McMahon, and Evan Weese (collectively, "Plaintiffs"), hereby submit this memorandum of law in support of their Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards.

Plaintiffs are requesting an award of attorneys' fees of $1,166,666.67, one-third of the $3,500,000 Settlement Fund, along with reimbursement of litigation expenses of $41,204.41. Plaintiffs' counsel have worked more than 754 hours on this matter from January 25, 2024 (the date of the appointment of leadership, Doc. No. 30) through July 1, 2026. See Declaration of Jean S. Martin, Doc. No. 77 at 7-8. Plaintiffs' counsel also incurred and seek reimbursement of $41,204.41 in litigation costs and expenses. *Id.* at 8-9. And as contemplated in the Settlement Agreement, Plaintiffs also seek Service Awards[1] of $1,500 for each of the Class Representatives (for a total of $15,000) to compensate them for the time and effort spent pursuing the Action on behalf of the Settlement Class. Settlement Agreement, Doc. No. 72 at 12. As detailed throughout this memorandum, the requested amounts are reasonable given the excellent result obtained for the Class as a result of the time and effort invested by Class Counsel and the Class Representatives and under the law applicable to each of Plaintiffs' requests.

Plaintiffs respectfully request that the Court award attorneys' fees, costs, expenses, and Service Awards in connection with the Settlement Fund as part of Final Approval.

## I. INTRODUCTION

Through this litigation and the high quality work performed by Class Counsel, the Class has obtained ZOLL's commitment to fund a $3,500,000 non-reversionary common fund, which

[1] All capitalized herms herein shall have the meaning ascribed to them in the Settlement Agreement. *See* Settlement Agreement, Doc. No. 72.

will be used to pay for: (i) payments to Class Members who submit a Valid Claim; (ii) administration and notice costs; (iii) any court-approved Attorneys' Fees and Expenses; (iv) any court-approved Service Awards to Class Representatives. Payments to Class Members can take one of two forms: (1) reimbursement of up to $5,000 in documented out-of-pocket losses attributable to the Data Incident, or (2) a cash payment determined by distributing the Net Settlement Fund on a *pro rata* basis, using a weighted allocation that provides one of two payout amounts depending on whether an individual's Social Security Number was potentially implicated in the Data Incident. Those whose SSN may have been impacted (the "SSN Subclass") will receive 2 shares, while those whose SSN was not implicated in the Data Incident (the Non-SSN Subclass) will receive 1 share.

The Settlement provides significant relief for the Class, and the reaction to the Settlement to date is further proof that Class Counsel obtained a favorable result for the Class. As of July 16, 2026, 11,654 Class Members have submitted claims, and there has been only one request for exclusion from the class. Moreover, there have not been any objections to the Settlement to date. Doc. No. 77 at 31.

## II. BACKGROUND

This class action lawsuit arises out of Defendant ZOLL Medical Corporation's ("ZOLL" or "Defendant") alleged failure to safeguard the Personal Information of current and former patients and employees. Plaintiffs allege ZOLL's failure allowed cybercriminals to exfiltrate Plaintiffs and proposed class members personally identifiable information ("PII") and protected health information ("PHI," collectively, "Personal Information") through a Data Incident that occurred between January 22, 2023, and January 24, 2023.

After ZOLL notified those affected by the Data Incident, fifteen individual lawsuits were filed and eventually consolidated before this Court. This Court then reviewed competing motions for appointment of interim class counsel, ultimately appointing Jean S. Martin as Interim Lead Class Counsel, and Jason M. Leviton as Interim Liaison Counsel (collectively, Interim Class Counsel). Doc. No. 30.

Interim Class Counsel then worked with counsel for the other plaintiffs to prepare a Consolidated Class Action Complaint. Interim Class Counsel engaged other plaintiffs' counsel to vet plaintiffs for inclusion in the Complaint, communicate with their individual clients for information needed for the allegation in the Complaint and to verify the personal allegations made in the Complaint. Doc. No. 77 at 7, ¶ 24. The Complaint, which Plaintiffs filed on February 24, 2024, advanced claims for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, and unjust enrichment, all on behalf of a nationwide class consisting of all persons residing in the United States whose Personal Information was impacted by the Data Breach. Doc. No. 33 at 52-75. The Complaint also advanced varying statutory claims on behalf of several state subclasses. *Id.* at 75-90.

ZOLL moved to dismiss the Complaint, arguing both that Plaintiffs lacked Article III standing, and that Plaintiffs had failed to state a claim for relief. Plaintiffs briefed their opposition to ZOLL's motion, which involved rebutting ZOLL's arguments on standing, as well as ZOLL's arguments on each of the five claims brought on behalf of a nationwide class, as well as ZOLL's arguments on the state law claims. Doc. No. 38. Interim Class Counsel engaged specific plaintiffs' counsel to assist in the briefing of ZOLL's motion. Doc. No. 77 at 7, ¶ 24.

On January 31, 2025, the Court held a hearing on ZOLL's motion to dismiss, and on March 31, 2025, the Court issued an order granting in part and denying in part ZOLL's motion.

Specifically, the Court held that Plaintiffs had standing because Plaintiffs had plausibly alleged that some of their Private Information that was impacted by the Data Incident had already been misused in incidents of financial fraud fairly traceable to ZOLL, and because Plaintiffs had standing to seek redress for injuries in the form of emotional distress and lost benefit of the bargain. Doc. No. 45. The Court further held that Plaintiffs had standing to seek injunctive relief, because Plaintiffs had adequately alleged a material risk of their Private Information being misused in the future. *Id.*

With respect to ZOLL's arguments that Plaintiffs had failed to state a claim for relief, the Court denied the motion for most of Plaintiffs' claims, allowing Plaintiffs to proceed with negligence claims under Massachusetts, Pennsylvania, Illinois, Florida, Texas, and New York law. *Id.* The Court also allowed Plaintiffs' claims for breach of fiduciary duty, as well as their claims for unjust enrichment to go forward. *Id.* Finally, the Court allowed Plaintiffs Priddy, McGilberry, Jemison, Becker, Bendriss, Brown, Pacholczak, and McMahon to proceed with breach of implied-in-law contract claims, and it allowed Plaintiffs McGilberry and Brown to proceed with claims for violations of the Florida Deceptive and Unfair Trade Practices Act. ("FDUTPA"). *Id.*

Following the Court's decision, the parties began exploring the possibility of resolving Plaintiffs' claims without further litigation, and pursuant to these discussions, the parties agreed to attend mediation. To prepare for this mediation, the parties engaged in certain informal discovery, including the exchange of extensive information about the Data Incident. Interim Class Counsel also retained an expert on dark web identification of data. Doc. No. 77 at 3, ¶ 6. These pre-mediation efforts provided Plaintiffs with further insight into the relative strengths and weaknesses of their claims.

On November 18, 2025, the Parties attended an in-person mediation session with Mike Ungar of UB Greensfelder. The session lasted the entire day, with counsel for both sides fighting hard for a resolution that would be in the best interests of their respective clients. Despite hard-fought negotiations, the parties were unable to reach an agreement during the mediation. Doc. No. 77 at 3. Thereafter, the parties continued to engage in good-faith negotiations and the exchange of pertinent information regarding the Class, which culminated in an agreement to settle Plaintiffs' and proposed Class Members' claims.

This agreement was shaped by the parties' pre-mediation discovery, through which Interim Class Counsel was able to determine that there were two groups of class members: those whose SSN was impacted by the Data Incident, and those whose SSN could not have been impacted. To account for this, Interim Class Counsel negotiated a settlement that treated all class members equitably, by creating a SSN Subclass, and a Non-SSN Subclass, and apportioning relief between the two on a weighted basis. At the same time, the Settlement preserved all Class Members' ability to be reimbursed for up to $5,000 in documented losses attributable to the Data Incident.

Through the extensive discussions with counsel for ZOLL, Interim Class Counsel also learned that, due to the nature of the ZOLL medical device used by patients, the number of living Class Members continued to decrease. Doc. No. 77 at 3, ¶ 8. Accordingly, a settlement now, rather than after protracted litigation, was in the best interests of Class Members. *Id.*

After a settlement in principle was reached, Interim Class Counsel then spent additional time negotiating the details of the Settlement Agreement with counsel for ZOLL. *Id.* Interim Class Counsel enlisted specific plaintiffs' counsel to assist in preparing the notice documents and claim forms that would be used to carry out the Settlement and the Motion for Preliminary Approval and supporting memorandum, which were filed on April 23, 2026. *Id.* at 7, ¶ 24.

This Court granted the Motion for Preliminary Approval on May 5, 2026. Doc. No. 75. Since then, Interim Class Counsel has worked with the Settlement Administrator to ensure the Notice was provided in accordance with the terms of the Settlement Agreement and Preliminary Approval Order and to ensure that the Settlement's provisions are carried out as designed to ensure that Class Members receive the benefits provided for in the Agreement. Doc. No. 77 at 8. Plaintiffs' counsel has been communicating with Settlement Class Members to assist them with the Settlement claims process and will continue to do so throughout the claims period. *Id.* at 7-8.

As of July 16, 2026, only one Class Member have sought to exclude themselves from the Class and no objections have been filed. *Id.* at 10, ¶ 31.

Class Counsel now respectfully move this Court for an award of attorneys' fees in the amount of $1,166,666.67, which equates to one-third of the Settlement Fund. When applying the relevant factors and standards, the fee and expense request fall well within the range of reasonableness under both a percentage of the fund approach and a lodestar approach. Class Counsel also seeks an award of reasonable litigation expenses in the amount of $41,204.41 and service awards for the Class Representatives in the amount of $1,500 each, for their efforts on behalf of the Settlement Class.

The parties did not discuss attorneys' fees, expenses, or service awards until after all of the substantive provisions of the settlement were finalized. Upon negotiation, as memorialized in the Settlement Agreement, ZOLL agreed not to object to any request for attorneys' fees up to $1,166,666.67 (1/3 of the settlement fund) and ZOLL has further agreed not to object to any request for up to $50,000 in litigation expenses. Moreover, the Settlement expressly states that it is not contingent on any award of attorneys' fees, expenses, or service awards, and that this Court's resolution of these requests will have no bearing on the enforceability of the agreement.

To ensure that Class Members have the opportunity to consider all of the information that may be pertinent to their decision, Class Counsel are filing this Motion for Attorneys' Fees, Expenses, and Service Awards for Class Representatives, 14 days prior to the deadline for Class Members to opt out of or object to the Settlement.

## III. LEGAL STANDARD

### A. Attorneys' Fees and Expenses

"The 'common-fund' doctrine allows counsel to draw a reasonable fee as a percentage of the fund created by a settlement for the benefit of the class." *Mooney v. Domino's Pizza, Inc.*, No. 1:14-cv-13723-IT, 2018 WL 10232918, at *1 (D. Mass. Jan. 23, 2018) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). While courts in the First Circuit have discretion to choose between the lodestar approach, the percentage of funds approach, or a combination of the two, the prevailing practice in cases involving a common settlement fund is the percentage of funds approach. *See In re Thirteen Appeals*, 56 F.3d 295, 306-307 (1st Cir. 1995); *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (collecting cases and noting "there is a clear consensus among federal and state courts that the percentage of funds approach is the more efficient, better reasoned, and effective method.") (internal quotations and citations omitted).

When using the percentage of funds method, courts in this Circuit routinely find that an award amounting to one-third of the fund is appropriate, so long as the resulting fee is reasonable. *Kondash v. Citizens Bank, Nat'l Ass'n*, No. 18-cv-00288, 2020 WL 7641785, at *4 (D.R.I. Dec. 23, 2020) (collecting cases); *In re Solodyn Antitrust Litig.*, No. 1:14-md-2503, 2018 WL 7075881, at *2, (D. Mass. July 18, 2018); *see also Bickham v. ReproSource Fertility Diagnostics, Inc.*, No. 1:21-cv-11879, 2024 WL 3677917, at *1 (D. Mass. July 17, 2024) (recommending award of

33.33% of common fund in data breach class action settlement), report and recommendation adopted sub nom. *Bickham v. ReproSource Fertility Services*, 1:21-cv-11879, Doc. No. 90 (D. Mass. July 25, 2024)). And to confirm the resulting fee is reasonable, courts consider:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*Kondash*, 2020 WL 7641785, at *4 (quoting *In re Loestrin* 24 Fe Antitrust Litig., 2020 WL 4035125, at *5).

## IV. ARGUMENT

### A. The Requested Attorneys' Fees are a Reasonable Percentage of the Common Fund

#### 1. The Size of the Fund and Number of Persons Benefitted

Both the size of the fund and the number of persons benefitted by the Settlement support the amount of fees requested here. *Id*. The Settlement establishes a $3,500,000 non-reversionary common fund, entirely funded by ZOLL, that will facilitate a meaningful monetary recovery for a significant number of people. As of July 16, 2026, over 11,000 people have already submitted claims, and there are still several weeks remaining for others in the Class to do the same. The Settlement will put money directly into the hand of all Settlement Class Members who submit a valid claim, in the form of up to $5,000 reimbursement of out-of-pocket expenses or a weighted pro rata cash payment.

#### 2. Skill, Experience, and Efficiency of Attorneys Involved

The skill, experience, and efficiency of the attorneys involved likewise supports Plaintiffs' request for attorneys' fees. *Kondash*, 2020 WL 7641785, at *4 As the Court recognized in its order appointing Jean S. Martin as Interim Lead Counsel, Class Counsel is highly experienced in complex class action litigation, and in particular, in data breach and privacy litigation. *See* Doc.

No. 30; *see also* Doc. No. 24-1 at 3 (detailing Class Counsel's experience serving as class counsel in data breach class actions through final approval). Data breach litigation is a cutting-edge area of the law that presents numerous developing issues, evolving precedents, and unpredictable outcomes. *See*, *e.g.*, *Corra v. ACTS Ret. Servs., Inc*., No. CV 22-2917, 2024 WL 22075, at *12 (E.D. Pa. Jan. 2, 2024) ("[D]ata breach cases such as this one are complex and risky, and recovery at trial is decidedly uncertain—$350,000 in cash is significantly better than nothing."); *Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Though Plaintiffs strongly believe in the merits of their claims, Plaintiffs and Class Counsel acknowledge that proving causation and damages in the emerging area of data breach cases can be difficult and is by no means guaranteed. *See*, *e.g*., *Hashemi v. Bosley, Inc.*, No. 2:21-cv-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (explaining that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Continued litigation would have required formal discovery, numerous depositions, expert reports, obtaining and maintaining class certification through trial, and summary judgment, which would require multiple rounds of briefing and the possibility of no recovery at all. Doc. No. 77 at 4-5. The Settlement here guarantees relief to the Settlement Class whereas further protracted litigation would not. *Id.*

The Settlement in this case serves as further evidence of the skill, experience, and efficiency Class Counsel was able to leverage to obtain a favorable result for the Class. The Settlement addresses the type of injuries and repercussions sustained by Settlement Class Members as a result of the Data Incident and offers significant compensation to each Settlement Class Member. "[T]hrough the Settlement, Plaintiffs and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc*., No. 21-CIV-61275-RAR, 2023 WL

4420348, at *8 (S.D. Fla. July 8, 2023). The complexity of the case and the quality of Class Counsel's performance weighs in favor of the fee request.

**3. Complexity and Duration of Litigation**

It has been over three years since this litigation first began, and while the parties were able to settle the case prior to formal discovery proceedings, the complexity of the litigation has been on display throughout this time period, as demonstrated by the parties' lengthy briefing on the motion to dismiss Plaintiffs' Consolidated Complaint. Indeed, data breach class actions are inherently complex, and this case was no exception. *See In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456 (3d Cir. 2025) (affirming award of attorneys' fees in data breach class action where district court explained that this factor supported award because data breach litigation is "inherently complex"); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases … are particularly risky, expensive, and complex."). They involve a novel area of the law that is continually evolving, and often implicate arguments about Article III standing, which is itself an area of the law that has undergone significant transformations in recent years. *See e.g. TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *see also Edke v. Belden, Inc.*, No. 21-cv-0813, 2021 WL 3022322 (N.D. Ill. July 16, 2021) (recognizing "the law of Article III standing in data breach cases has evolved rapidly over the last decade, making this a relatively complex area of standing law"). Altogether, this factor weighs in favor of granting Plaintiffs' requested attorneys' fees.

**4. Risks of Litigation**

For reasons related to the complexity and uncertainty inherent in data breach litigation, courts regularly hold that the risks of undertaking such litigation on a contingent basis is a factor that should be accounted for when considering the proper amount of attorneys' fees. *See Krant v.*

*UnitedLex Corporation*, No. 23-cv-2443, 2024 WL 5187565, at *8 (D. Kan. Dec. 20, 2024) (noting class actions "have a well-deserved reputation as being most complex" and adding "as recognized by other courts, data breach cases are especially risky, expensive, and complex given the unsettled nature of the law") (further citation omitted); *See also In re Capital One Consumer Data Security Breach Litig.*, MDL No. 1:19-md-2915, 2022 WL 17176495, at *2 (E.D. Va. Nov. 17, 2022) (noting that data breaches are a "risky field of litigation" and that Class Counsel undertaking the case on a contingency basis despite these risks weighed in favor of substantial fee award); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019) ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable.").

**5. Amount of Time Devoted to the Case by Counsel**

This time devoted to prosecuting this action by Plaintiffs' Counsel lends further support to the fee request. Plaintiffs' Counsel devoted substantial time, labor, and resources to achieve the Settlement. Measuring only from the time this Court appointed Class Counsel, through June 30, 2026, Plaintiffs' Counsel have devoted 754.3 hours to prosecuting this case. Doc. No. 77 at 7. This includes preparing the consolidated complaint, briefing and arguing the motion to dismiss, preparing for mediation (including pre-mediation discovery), attending mediation, negotiating the settlement terms and the details of the Settlement Agreement, negotiating and preparing the notice documents, communicating with Plaintiffs, responding to inquiries from Class Members, and overseeing settlement administration.

Although Class Counsel has consistently sought to keep costs and fees to a minimum, this case required a significant amount of work and time. Class Counsel assigned discrete tasks to other

Plaintiffs' Counsel to ensure efficiency and avoid duplication of efforts. Doc. No. 77 at 7. This case was litigated against a large company with experienced national counsel experienced in data privacy litigation. Doc. No. 77 at 4, ¶ 12.

Notably, the presented hours only include time after the leadership order was entered, meaning that this does not account for time spent by all counsel filing individual cases investigating the breach prior to filing suit, preparing the complaint, or moving for leadership.[2] Nor does it account for any time spent after June 30, 2026, including the time spent preparing this motion, as well as the time that will be spent preparing the motion for final approval, attending the final approval hearing, and overseeing the claims administration and distribution process.

A lodestar cross check illustrates how the time devoted to the case provides further support for the fees requested here. Taking into account only the 754.3 hours described above, Plaintiffs' Counsel collectively have a lodestar of $650,447. The $1,166,666.67 in fees requested thus represents a 1.79 multiplier on that lodestar, which is well within the range of multipliers routinely approved in this Circuit. *See e.g. Kondash*, 2020 WL 7641785, at *6 (holding that 2.7 multiplier in data breach class action supported granting request for attorneys' fees equal to one-third of common fund); *Mooney*, 2018 WL 10232918, at *2 (approving multiplier of 4.77 as "well within the bounds of reasonableness for a class action"). Again, the presented lodestar does not account for time that will be spent preparing the motion for final approval, presenting the motion at the final approval hearing, and overseeing the claims administration and distribution process. Doc. No. 77 at 6-7. As such, the present multiplier of 1.79 will only decrease.

**6. Awards in Similar Cases**

---

[2] Class Counsel expressly chose to eliminate from the Court's consideration any time spent by plaintiffs' counsel organizing and consolidating the cases and moving for contested leadership. Doc. No. 77 at 6, ¶ 23.

The requested fees are also consistent with this Court's attorneys' fee awards in similar cases. *See Dunn v. Complete Payroll Solution, LLC*, No. 1:25-cv-30045, Doc. No. 65 at 6 (D. Mass. June 25, 2026) (awarding attorneys' fees equal to one-third of $2.6 million common fund in data breach class action); *Weekes v. Cohen Cleary, P.C.*, 1:23-cv-10817, Doc. No. 61 at 5 (D. Mass. Aug. 14, 2025) (awarding attorneys' fees equal to 33.33% of $150,000 common fund in data breach class action).

Courts across the country routinely approve similar awards. *See e.g., In re Fortra File Transfer Software Data Security Breach Litig.*, 794 F. Supp. 3d 1203, 1224 (S.D. Fla. 2025) (awarding one-third of $7 million common fund in data breach class action); *All Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-cv-296, 2024 WL 3203226, at *15 (M.D.N.C. June 27, 2024) (awarding one-third of common fund of $2,616,783 and describing fees equal to one-third of common fund as "customary and typical of like awards"); *In re Forefront Data Breach Litig.*, No. 21-cv-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (awarding one-third of $3.75 million common fund); *Kondash*, 2020 WL 7641785, at *6 (awarding attorneys' fees in data breach class action equal to one-third of common fund). Thus, this factor likewise supports granting Plaintiffs' request for attorneys' fees.

**7. Public Policy Considerations**

Finally, public policy considerations also provide support for granting Plaintiffs' request for attorneys' fees. As courts have long recognized, the class action device serves an important public interest in securing remedies for consumers who, for practical reasons, would likely be unable to litigate their claims on an individual basis. *See In re Capital One Consumer Data Security Breach Litig*, 2022 WL 17176495, at *5 (recognizing the role class actions play in ensuring access to justice and holding that public policy counseled in favor of awarding attorneys'

fees above what class counsel would have charged on an hourly basis). And in the data breach context in particular, public policy considerations are likewise served by rewarding litigation that incentives companies to ensure they are taking the appropriate steps to protect the sensitive information in their possession.

**B. The Requested Expenses Are Reasonable and Should Be Reimbursed**

The common-fund doctrine likewise allows for the recovery of reasonable expenses incurred during the prosecution of the litigation. *In re Fideltiy/Micron Securities Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (finding counsel whose efforts create a common fund to benefit a class are entitled to recover from the fund "expenses reasonable in amount, that were necessary to bring the action to a climax."); *see also Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 351-352 (D. Mass. 2015). To be recoverable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Plaintiffs' Counsel incurred and seek reimbursement of costs and litigation expenses totaling $41,204.41. Doc. No. 77 at 8-9, ¶ 27. The costs and expenses that Class Counsel requests that Plaintiffs' Counsel be reimbursed for include expenses for filing fees, legal research, mediation fees, photocopies, postage, and other fees incurred in the ordinary operation of practicing law prosecuting this action, which may increase between now and the Effective Date of the Settlement. *Id.* Plaintiffs' Counsel advanced these costs and expenses for the benefit of the Class without any guarantee that these costs and expenses would be recovered. These expenses are typical of litigation, reasonable in amount, and necessary. *Id.* As such, the request for expenses should be approved.

**C. The Requested Service Awards Are Reasonable And Should Be Granted**

Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Carlson v. Target Enterprise, Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (awarding $7,500 service award to named plaintiff); *Bezdek*, 79 F. Supp. 3d at 352 (service awards "serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall."). Service awards are commonly awarded in data breach class actions and should be awarded here. *See*, *e.g.*, *In re Novant Health, Inc*., 2024 WL 3028443, at *13 (approving service awards of $2,500); *Beasley v. TTEC Servs. Corp.,* No. 1:22-cv-00097-PAB-STV, 2024 WL 710411, at *7 (D. Colo. Feb. 21, 2024) (awarding service awards of $2,500).

Here, Plaintiffs are requesting a modest $1,500 service award for each of the ten named plaintiffs for their active participation in the litigation. The Plaintiffs put themselves forward in and lent their names to litigating this case, participated in pre-suit investigation, provided information to counsel when requested throughout the case, kept abreast of the case's status, reviewed documents provided to them by counsel, discussed with counsel various aspects of the case and approved the settlement terms. *See* Doc. No. 77 at 9-10, ¶ 30. In light of the time the named plaintiffs contributed to the litigation, and the amounts that have been awarded by other courts in this District and the First Circuit, Plaintiffs respectfully request the Court grant their request for a $1,500 service award for each of the ten named plaintiffs. *See Bezdek*, 79 F. Supp. 3d at 352 (awarding $2,500 service award for each of two named plaintiffs, and $1,500 service award for a third named plaintiff); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 469 (D.P.R. 2011) (awarding $8,000 service award to each of six named plaintiffs); *In Re: Fidelity Data Breach Litigation*, 24-cv-12601-LTS, Dkt. 84 (July 9, 2026) (awarding $2500 service award

for each of the five named plaintiffs); *Portier et al. v. NEO Technology Solutions*, *et al.*, No. 17-cv-30111-TSH, Dkt. 163 (September 15, 2022) (approving $5,000 service award for each named plaintiff in a data disclosure case wherein the plaintiffs sat for depositions).

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant Plaintiffs' motion for attorneys' fees, expenses, and service awards.

Dated: July 20, 2026

Respectfully Submitted,

/s/ *Jean Martin*
Jean S. Martin (N.C. Bar No. 25703)
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLC**
17 East Main Street, #200
Pensacola, Florida 32502
Telephone: (850) 266-2893
Facsimile: (850) 916-7449
Email: jmartin@awkolaw.com